IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| DANVILLE COMMERCIAL INDUSTRIAL STORAGE, LLC, and NORTH AMERICAN MOLD TECHNOLOGY, LLC, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No.: 4:18cv00050-JLK<br>) |
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, JAMES PEBBLES, HAYWOOD PARKER, IN-LINE CONSULTING, LLC, KIM E. WINCHELL, AND H.B. FISHMAN & CO., INC. | )<br>)<br>)<br>)<br>)<br>) |
| Defendants | )<br>) |

**RESPONSE MEMORANDUM OF PLAINTIFF, NORTH AMERICAN MOLD TECHNOLOGY, LLC, TO DEFENDANTS H.B. FISHMAN & CO., INC., AND KIM E. WINCHELL'S BRIEF IN SUPPORT OF MOTION TO DIMISS FOR FAILURE TO STATE A CLAIM (DOCKET NO. 24)**

Comes the Plaintiff, North American Mold Technology, LLC ("NAMT"), by counsel, and hereby responds to Defendants H.B. Fishman & Co., Inc., and Kim E. Winchell's Brief in Support of Motion to Dismiss for Failure to State a Claim (DN 24) as follows.

**PRELIMINARY OBSERVATIONS**

The arguments made by H.B. Fishman & Co., Inc. ("HB Fishman") and Kim E. Winchell ("Winchell") focus on two issues: Intracorporate Immunity Doctrine and whether sufficient facts are evident from the Complaint and attached exhibit that meet the criteria for presenting a claim for conspiracy. No distinction is made vis-à-vis common law conspiracy and statutory conspiracy in terms of the arguments made.

1

When it comes to Rule 12(b)(b) Motions to Dismiss, "[i]n addition to the complaint, the court may also examine 'documents incorporated into the complaint by reference, and matter of which a court may take judicial notice.'" *Skillstorm, Inc. v. Electronic Data Sys., LLC,* 666 F. Supp. 2d 610, 615 (E.D. VA 2009) *quoting Tellabs, Inc. v. Makor Issues Rights, Ltd*., 127 S. Ct. 2499, 2509 (2007).

. He, together with the co-defendants,

Lyle Hogan ("Hogan") of Fincastle Engineering was the first engineer on site post-loss to address the need for temporary repairs. His report, dated August 9, 2016, is attached as Exhibit B to the Complaint. (DN 12.) His first-hand observations of the collapsed area led him to record "that this particular region did not appear to contain entrapped water" and "[a]gain, wet roof insulation was not recorded in the collapse zone." (Id. at 2). He offered his expert opinion that the roof collapse was due to the "extraordinary rainfall activity, likely approaching 'white-out' conditions for a period" in combination with some building design/structure issues in vogue at the time of original construction. *Id.* Of significance, there is no mention of "poor maintenance" as a contributing or overriding factor. Hogan also identified that steel decking "was moderately pitted, but much of it was on the underside – suggesting a corrosive environment area from prior manufacturing activities." *Id.* Hogan did not equate the pitting with any notions of trapped moisture from above. Hogan's report was promptly shared with Pebbles and re-shared with the filing of the Proof of Loss.

Notwithstanding formal notification that

1. There was no wet insulation in the collapsed area;
2. There had been an extraordinary rain event approaching "white-out" conditions;

2

3. Pitting on steel decking was evidence of a prior corrosive warehouse environment and not due to the notion of prior trapped moisture in roof insulation from above,

Selective Insurance Company of South Carolina ("Selective"), through James Pebbles ("Pebbles") commissioned Winchell and HB Fishman to prepare not one but two reports. The first, dated November 14, 2016 was based on onsite visits on October 20 and 21 and November 1 and 2, 2016[1] as well as a meeting with Haywood Parker on October 20, 2016. Winchell visited the loss site more than 100 days post-loss and after reports of extensive roof leaks post-July 3, 2016 were shared with Pebbles. The second, dated November 18, 2016, consisted of a compilation of select weather data gleaned online associated with the Danville Airport some seven miles from the loss location. It is suggested that the Court can take judicial notice that weather data for a location seven miles aware is not a true indicator of the actual weather at the loss location and that the best evidence is the actual available data for the GPS coordinates of the loss location. That data was secured and provided by Howard Altshule and Forensic Weather Consultants, LLC. (DN 13-1 Ex. I.)

Notwithstanding having the Hogan and Altshule reports in hand, Selective, through Pebbles, with help from Winchell and Parker via their reports and communications (and, it should be noted, ignoring the report of Carville Evering of Callan Salvage & Appraisal Co., Inc. with regard to damaged personal property), knowingly developed erroneous data upon which Pebbles has acted. This, notwithstanding the receipt by Pebbles and Selective of real, pertinent, relevant and site-specific data and who would be expected to have shared with their hired experts.

**ARGUMENT**

**A. Are Counts IV and V for Common-Law Conspiracy and Statutory Conspiracy, Respectively, Barred by the Intracorporate Immunity Doctrine?**

---

[1]The Complaint contains a typographical error at ¶ 49 with the year referenced in one place as 2018, but elsewhere as 2016. To be clear, all references should be understood to be 2016.

Winchell and HB Fishman argue that Counts IV and V must fail because a corporation cannot conspire with its own employee or agent and that the fall within the category of agents of Selective. Winchell and HB Fishman cite *SecureInfo Corp. v Telos Corp.*, 387 F. Supp. 2d 593 (E.D. Va. 2005) for the proposition that "consultants are considered agents of the corporation for purposes of assessing Intracorporate immunity." DN 24 at 4.

First, a look at the allegations in the Complaint reveals that at no time is there any actual assertion that either Winchell was hired as an employee of Selective. What is clear from the allegations in the Complaint is that Winchell is a Senior Associate and employee of HB Fishman (DN 11 at 4, ¶ 14). Further, the allegations in the Complaint only go so far as to indicate that Selective, through Pebbles, retained Winchell for a limited purpose. At no point is there any allegation that Selective had the power to control the activities and actions of Winchell and HB Fishman. It is the power of control that differentiates between a true agency relationship and that of an independent contractor as made clear by Virginia Model Jury Instruction No. 8.100:

> **Definition of Independent Contractor**
>
> An independent contractor is a person who is engaged to produce a specific result but who is not subject to the control of the employer as to the way he brings about that result.

In *Hadeed v Medic-24, Ltd*, 237 Va. 277, 288, 377 S.E.2d 589, 594-95 (1989), the Supreme Court of Virginia identified four factors as important on the issue of a master-servant relationship versus that of an independent contractor with the fourth – the issue of control – as determinative.

> Four factors enter into determination of the question whether a master-servant relationship exists within the contemplation of the doctrine of respondeat superior, (1) selection and engagement of the servant, (2) payment of compensation, (3) power of dismissal, and (4) power of control. The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative.

4

On the face of *SecureInfo Corp.*, Winchell and HB Fishman are correct that a consultant secured a favorable result on a motion to dismiss conspiracy claims. However, a close reading of the case reveals that the status of the consultant as a consultant was not the deciding factor, meaning that classification is irrelevant for the analysis that must be done. Instead, and this comes straight from *SecureInfo Corp.*, the Court found that Mr. Berman, the consultant, satisfied the requirements of an "agent" under Virginia law. It was this satisfaction that led to the granting of the motion to dismiss the conspiracy claims. More particularly, Mr. Berman satisfied a two-part test:

      1) he was subject to the control of the principal with regard to the work to be done and manner of performing it, and
      2) the work has to be done on the business of the principal or for the principal's benefit.

*Id*. at 616-17 (citation omitted).

In the absence of allegations establishing a relationship beyond that of an independent contractor, that is far as any interpretation and assessment of the facts in the Complaint can go and the Intracorporate Immunity Doctrine is unavailable to Winchell and HB Fishman.

Accordingly, Intracorporate Immunity as a basis to dismiss Counts IV and V must fail.

**B. Count IV for Common Law Conspiracy**

Winchell and HB Fishman appear to be claiming that NAMT has not satisfied the pleading requirements for common law conspiracy (though it is hard to tell since its supporting memorandum does not distinguish between the two). However, if the issue here is satisfaction of the two elements – a combination of two or more persons for the purpose of willfully and maliciously injuring NAMT in its business plus damages, NAMT believes that it has met its pleading burdens. At a minimum. Pebbles/Selective hired Winchell/HB Fishman to conduct a roof inspection and generate a weather analysis report. The two had worked together before. It is a

5

matter of common sense and of judicial notice that experts that work for insurers quickly learn what information insurers like to receive and that satisfying insurers promotes additional job activity in the future on other projects.

That being said, Winchell created a report for Pebbles/Selective that alleged roof moisture issues were solely the result of poor roof maintenance and pre-existing issues based, primarily, on underside corrosive observations on steel decking made by him. Winchell did not endeavor to determine the history of the warehouse in terms of usage or maintenance – i.e., the corrosive environment within the warehouse when operated by Corning – but understood that with such a report, premised on inaccurate or outright fraudulent interpretations, Pebbles/Selective would be able to minimize Selective's exposure to its insureds and their losses.

Similarly, when asked to generate weather data at a November 16, 2016,[2] Winchell did not decline the request due to a lack of qualification and engaged in an effort for a location – the Danville Airport – over seven miles from the warehouse in question. He then presented as the best available evidence to the loss location and opined that only 0.94 inches of rain fell on the warehouse on July 3, 2016. He went on to assert that there were days before and after the loss with higher daily rainfall amounts.

At no point, apparently, did Winchell consider the absurdity of identifying only 0.94 inches of rain led to the roof collapse and other losses at the warehouse. Winchell knew this information, albeit inaccurate and false to the location at issue, would be welcomed by Pebbles and allow Pebbles to take rigid positions with regard the claims of NAMT (and DCIS). Winchell made no effort to secure data from the primary weather source, the National Weather Service, nor sought to harmonize the data he generated with the physical realities of what happened on July 3, 2018.

---

[2]This date reference comes from Exhibit G, the weather report prepared by Winchell located at DN 12-6.

Pebbles gladly took Winchell's reports and used heavily to issue his December 19, 2016 letter knowing full well, as an experienced property adjustor, that the first report was at odds with Hogan's report as the first expert on the scene, and the weather report was inconsistent with the observations of Hogan as recorded in his report and the eyewitness accounts (including photographs) of the damage to the warehouse. These two willfully and maliciously went about creating a false account of factual data upon which Pebbles, for Selective, then used knowing, full well, this would delay redress of the damage to the warehouse and redress of the damage to the Goodyear molds in the possession of NAMT and, by way of other communications to Pebbles, that unrepaired environment for the tire molds was likely to lead to termination of Goodyear's contract with NAMT.

The foregoing, it is submitted, can be gleaned from the lengthy discussion of the actions of Pebbles and Winchell in the numbered paragraphs of the Complaint as well as from the exhibits attached thereto.

### C. Count V for Statutory Conspiracy

Per *Commercial Business Sys., Inc. v BellSouth Servs., Inc.*, 249 Va. 39, 47, 453 S.E.2d 261, 266-67 (1995), all that is necessary is a defendant acted intentionally, purposefully and without lawful justification. In the preceding section, NAMT reviewed its allegations of the conduct of Pebbles and Winchell and how they intentionally, purposefully and without lawful justification went about creating a false and fraudulent account of the condition of the warehouse prior to July 3, 2016 and the weather event itself all to justify a hardline stance with regard to claims resolution knowing that such a posture would cause injury to NAMT and harm to NAMT's relationship with Goodyear.

7

The proof requirement on NAMT and, thus, the pleading requirement, does not mandate a showing the primary and overriding purpose of each conspirator was to injure NAMT in its trade or business. *Id*. Further, with regard to statutory conspiracy, it is not required

> that the co-conspirator act with legal malice. Rather, the statute simple requires that one party, acting with legal malice, conspire with another to injure the plaintiff.

*Va. Vermiculite Ltd. V. W. R. Grace & Co.-Conn.*, 144 F. Supp. 2d 558, 601 (W.D. Va. 2001).

With regard to Winchell's and HB Fishman's issues as to unity of action, the foregoing discussion, all evident from the allegations in the Complaint, would appear to provide a showing that Pebbles and Winchell acted in concert with regard to the creation of and use of false data all meant to cause harm to NAMT and its business operations and had specific meetings along the way.

If the Court should be on the view that factual allegations are lacking that, if present, would allow NAMT's conspiracy claims to move forward, NAMT requests leave to amend its Complaint in an effort to satisfy such concerns before any final ruling by the Court.

## CONCLUSION

NAMT believes that, with this Response Memorandum, it has successfully addressed all the issues raised by Winchell and HB Fishman and, accordingly, request that this Court deny their Motion to Dismiss.

Respectfully submitted,

NORTH AMERICAN MOLD TECHONOLGY, LLC

By:     /s/ Anthony H. Monioudis

8

Case 4:18-cv-00050-JLK-RSB   Document 32   Filed 09/13/18   Page 8 of 10   Pageid#: 2223

Anthony H. Monioudis, Esq. (VSB 32691)
**Counsel for Plaintiffs,**
  **Danville Commercial Industrial Storage, LLC and**
  **North American Mold Technology, LLC**
Anthony H. Monioudis, Esq., PLC
341 Main Street, Suite 201
Danville, VA 24541
Telephone: 434-797-8202
Facsimile: 434-835-2590
E-Mail:    anthony@ahmplc.com

### CERTIFITCATE OF SERVICE

I hereby certify that on September 13, 2018, I electronically filed the foregoing Response Memorandum of Plaintiff, North American Mold Technology, LLC, to Defendants H.B. Fishman & Co., Inc., and Kim E. Winchell's Brief in Support of Motion to Dismiss for Failure to State a Claim (Docket No. 24) with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Calvin W. Folwer, Jr., Esq.   (VSB 27982)
Harold E. Johnson, Esq.       (VSB 65591)
Justin S. Feinman, Esq.       (VSB 87511)
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, VA 23219
Telephone: 804-420-6000
Facsimile: 804-420-6507
E-Mail:    wfowler@williamsmullen.com
           hjohnson@williamsmullen.com
           jfeinman@williamsmullen.com
Counsel for Defendants,
  Selective Insurance Company of South Carolina and
  James Pebbles

Andrew Biondi, Esq.
Paul B. Hlad, Esq.
Sands Anderson PC
4101 Lake Boone Trail, Suite 100
Raleigh, NC 27607
Telephone: 919-706-4212
Facsimile: 919-706-4205

E-Mail;   PHlad@sandsanderson.com
Counsel for Defendants,
  IN-Line Consulting, LLC and
  Haywood Parker

Stephan F. Andrews, Esq.     (VSB 23756)
Andrew P. Selman, Esq.       (VSB 91060)
VANDEVENTER BLACK LLP
901 E. Byrd Street, Suite 1600
Richmond, VA 23219
Telephone: 804-237-8803
Facsimile;  804-237-8801
E-Mail:    sandrews@vanblacklaw.com
           aselman@vanblacklaw.com
Counsel for Defendants,
  Kim E. Winchell and
  H. B. Fishman & Co., Inc.

/s/  Anthony H. Monioudis